X FILED ___ LODGED
___ RECEIVED ___ COPY

DEC 2 8 2009

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY___ DEPUTY

LASHAUNA COLEMAN
P.O. BOX 23915
TEMPE, ARIZONA 85285
Telephone: 480-255-1736
Pro Per

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **LASHAUNA COLEMAN;** Plaintiff, v. **AMERICAN HOME MORTGAGE SERVICING, INC.,** a Delaware Corporation; **MICHAEL JEFFREY STRAUSS** President of **AMERICAN HOME MORTGAGE SERVICING, INC., ALAN BRUCE HORNE** and **STEPHEN ANTHONY HOZIE;** Vice Presidents of **AMERICAN HOME MORTGAGE SERVICING, INC., WELLS FARGO BANK NA, AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CARRINGTON MORTGAGE LOAN TRUST, SERIES 2006- OPT1 ASSET BACKED PASS THROUGH CERTIFICATES,** a Delaware Corporation; **CARRINGTON MORTGAGE LOAN INC.,** a Delaware Corporation, **CARRINGTON MORTGAGE LOAN TRUST** a Delaware Corporation; **QUALITY LOAN SERVICING CORPORATION,** a Delaware corporation; **TIM BARGENQUAST;** Assistant Vice President of **QUALITY LOAN SERVICING CORP.; SAND CANYON CORPORATION** a California Corporation, **OPTION ONE MORTGAGE CORPORATION;** a California Corporation; **SHELLY SCHEFFEY,** Vice president of **SAND** | Civil Action File No: CIV '09 2692 PHX DGC<br><br>**VERIFIED COMPLAINT**<br><br>**Breach of contract, Quiet Title A.R.S. §12-1102, §12-521, §12-523, §12-523(a), A.R.S. §12-522, Violation of the Fair Debt Collection Practices Act, Invalid Deed of Trust Law, A.R.S. §33-420 et. Seq., Infliction of Emotional Distress, Fraud-Misrepresentation , Conspiracy, Conversion/Civil Theft A.R.S. Ann. §13-1802(a)(1) (West 2003), and Violation of the Arizona Recording Statute § 33-404/ §33-706, Violation of RESPA U.S.C. §6-2605, A.R.S. §13-2320, Harassment, Conspiracy, The United States Constitution, Abuse of Process** |

| | |
|---|---|
| **CANYON CORPORATION; TYWANNATHOMAS**; Assistant Vice President of **SAND CANYON CORPORATION; Robert Dubrish;** President of **OPTION ONE MORTGAGE CORP.** a California Corporation.<br>Defendants. | **JURY TRIAL DEMANDED** |

**COMES NOW** LaShauna Coleman, a sentient woman, hereafter known as the plaintiff in this matter as the owner of the subject property seeking relief and damages against the herein named defendants for the causes of action set forth in this Verified complaint. Plaintiff humbly reminds the court those pleadings of pro se litigants are not held to the same high standards of perfection as lawyers. See: *Jenkins v. McKeithen,* 395 US 411, 421 (1969), See also: *Picking v. Penna. Rwy Co., 1151 F. 2d 240.* Plaintiff reserves the right to amend her complaint as discovery unfolds.

**PARTIES**

1. The plaintiff incorporates the allegations above.
2. The plaintiff now and all times is an Arizona inhabitant at all times relevant to the Complaint.
3. Plaintiff is the owner of the single family home located at 4039 E. Sunland Avenue Phoenix, Arizona 85040; parcel ID 123-16-055 (The property).
4. Plaintiff is also the Grantor under alleged deed of trust 20051841785 recorded in the Maricopa County Recorders' office.

5. Plaintiff is a "Consumer" as defined by **T.I.L.A. 15 U.S.C. §1602(h)** and Federal Reserve Board **Regulation Z, 12 C.F.R. § 226.2 (a)(11) and F.D.C.P.A. 15 U.S.C. § 1692 et seq.**

6. Upon information and belief, defendant, WELLS FARGO BANK NA as Trustee (WFB) is a Delaware corporation operating under the laws of the state of Arizona.

7. Upon information and belief, defendant, AMERICAN HOME MORTGAGE SERVICING (AHMSI) is a Delaware Corporation organized and operating under the laws of the state of Texas.

8. Upon information and belief, QUALITY LOAN SERVICE, INC. (QLSI) is a Delaware Corporation organized under the laws of the state of Arizona.

9. Upon information and belief, CARRINGTON MORTGAGE LOAN TRUST (CMLT) is a Delaware Corporation operating under the laws of the state of Connecticut.

10. Upon information and belief, CARRINGTON MORTGAGE LOAN, INC. (CML) is a Delaware Corporation organized under the laws of the state of Connecticut.

11. Upon information and belief, SAND CANYON CORPORATION is a California corporation organized under the laws of the state of California.

12. Upon information and belief, OPTION ONE MORTGAGE is a California Corporation organized under the laws of the state of California.

13. Upon information and belief, MICHAEL JEFFREY STRAUSS President of AMERICAN HOME MORTGAGE SERVICING, INC. is resident of the state of New York.

14. Upon information and belief, ALAN BRUCE HORNE and STEPHEN ANTHONY HOZIE; Vice Presidents of AMERICAN HOME MORTGAGE SERVICING, INC. are residents of the state of New York.

15. Upon information and belief TIM BARGENQUAST; Assistant Vice President of QUALITY LOAN SERVICING CORP. may be served through an acceptance agent for QLS.

16. Upon information and belief, SHELLY SCHEFFEY, Vice president of SAND CANYON CORPORATION is a resident of the state of California.

17. Upon information and belief, TYWANNA THOMAS; Assistant Vice President of SAND CANYON CORPORATION is a resident of the state of California.

18. Upon information and belief, ROBERT DUBRISH (JOHN DOE); President of OPTION ONE MORTGAGE is a resident of the state of Massachusetts.

19. Defendants are a "creditor" as defined in the **TILA,15 U.S.C. § 1602(f), Regulation Z, 12 § C.F.R. § 226.2(a)(17)(i),** a "Debt Collector" as defined **F.D.C.P.A. 15 U.S.C. § 1692(e) et. Seq.** Upon information and belief, defendants are debt collector as defined in the **FDCPA §1692 et. Seq.**

20. Defendants set forth above are hereinafter collectively referred to as "Defendants" or referred to by acronym as set forth in "General Allegations" of this complaint.

21. Defendants John Does I-V and XYZ Partnerships I-V, and ABC LLC's or other individuals, directors and officers or business entities who may be liable to Plaintiffs but whose identities are not presently known will be added, at which time Plaintiff will seek leave to amend the Complaint.

## JURISDICTION AND VENUE

22. Plaintiff incorporates the allegations above.

23. Defendants caused the events to occur in Maricopa County, Arizona, which are the subject matter of this complaint.

24. This court has jurisdiction over the matters related to emergency, injunctive, provisional and equitable relief sought herein, pursuant to the agreements of the parties referenced below.

25. The parties herein are subject to certain contractual obligations that are the subject of this litigation.

26. This court has jurisdiction over this matter pursuant to **28 U.S.C. § 1331**.

27. Venue is proper pursuant to Arizona Revised Statutes **§ 12-401**.

28. This court has supplemental jurisdiction over plaintiffs state law claims under **28 U.S.C. §1367.**

## GENERAL ALLEGATIONS

29. Plaintiff incorporates the allegations above.

30. Defendants are hereinafter referenced, in addition to their full names, in this complaint as follows: AMERICAN HOME MORTGAGE SERVICING INC.(AHMSI), OPTION ONE MORTGAGE CORPORATION (OPT-1), WELLS FARGO BANK (WFB), SAND CANYON CORPORATION (SCC), CARRINGTON MORTGAGE LOAN (CML), CARRINGTON MORTGAGE LOAN TRUST (CMLT), QUALITY LOAN SERVICE, INC. (QLSI), MICHAEL JEFFREY STRAUSS (STRAUSS), ALAN BRUCE HORNE (HORNE), STEPHEN

ANTHONY HOZIE (HOZIE), TIM BARGENQUAST (BARGENQUAST), SHELLY SCHEFFEY (SCHEFFEY), TYWANNA THOMAS (THOMAS) and ROBERT DUBRISH (DUBRISH).

31. This case arises out of Defendants' egregious, ongoing and far reaching fraudulent schemes.

**FACTUAL ALLEGATIONS**

32. Plaintiff incorporates the allegations above.

33. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of defendants sued herein was the agent, employee, assignee, predecessor or successor in interest of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and or employment.

34. Since 1994, Plaintiff is the owner of the single family home located at 4039 E. Sunland Avenue Phoenix, Arizona 85040; parcel ID 123-16-055 (The property). Plaintiff holds her interest in fee simple.

35. As of November 30, 2005, the plaintiff allegedly refinanced her home in order to obtain consumer funds to upgrade her home. Prior to November 30, 2005, plaintiff's home was under a fixed rate mortgage.

36. OPTION ONE MORTGAGE CORPORATION is named as the Lender/originator for the mortgage. See plaintiff's **Exhibit** 1; deed of trust.

37. On or around June 11, 2008, the plaintiff received a letter in the mail stating that AHMSI would be the new "servicer" for her loan. See plaintiff's **Exhibit** 2; "Change of servicer letter"

38. On September 9, 2008, the plaintiff obtained information in regard to her mortgage that she had not previously been privy to.

39. On December 22, 2008 entering into an administrative process, the plaintiff invoked ***RESPA***; **USC section 6 §2605** and thereby requested along with other material facts; full disclosure of the whereabouts of her genuine promissory note and the originator of such from AHMSI. See **Exhibit** 3; Plaintiff's QWR

40. Plaintiff sent same to OPTION ONE MORTGAGE. See plaintiff's exhibit 3.1; QWR to OPT-1.

41. No response was received from OPTION ONE MORTGAGE nor was the mailing returned to plaintiff.

42. Plaintiff sent a "general claims rescission" to AHMSI on or around February 5, 2009. See **Exhibit** 4 -4.1; plaintiff's general rescission notices to AHMSI & OPT-1.

43. AHMSI responded to the plaintiffs QWR on February 18, 2009. See **Exhibit** 5; AHMSI response to plaintiffs QWR

44. In comparison to the information that the plaintiff knew, believed, or had been led to believe, AHMSI's response to the QWR was inadequate and lacking in substance also, the letter contained severe misrepresentations.

45. On April 22, 2009, the plaintiff sent a secondary letter of dispute to AHMSI. See **Exhibit** 6; plaintiff's "general dispute letter."

46. On or around May 1st, 2009, AHSMI responded to plaintiffs second dispute with a letter stating that they would "cease and desist" communication. See **Exhibit** 7; AHMSI response to general dispute letter.

47. Because of the above referenced occurrences, on or around May 20th, 2009, the plaintiff re-sent QWR along with notices of cancelation, rescission, revocation of powers of attorney and signatures and removal of trustees to defendants. Same was sent to FIRST AMERICAN TITLE COMPANY. See **Exhibit** 8; notice of cancellation, **Exhibit** 9 revocation of power of attorney and signatures, **Exhibit** 10, notice of removal of trustee(s).

48. Seeking to protect her interest in the property, on May 20, 2009, plaintiff Quit claimed the defendants off of the deed of trust. See plaintiff's **Exhibit** 11; Quit claim deed

49. Despite AHMSI's statement cease and desist; to the best of the plaintiffs knowledge, sometime in May of 2009, defendants hired a company to come to the plaintiffs home on or around the first of each month and attach small scraps of paper to the frame of the front door. See **Exhibit** 12; "Scraps of paper".

50. Expecting viable and significant communication instead of small scraps of paper; On June 5th, 2009, the plaintiff sent a "notice of communication" to AHMSI which stated that they were only to communicate with plaintiff via mail and on their letterhead. See **Exhibit** 13; plaintiff's "notice of communication."

51. On August 5, 2009, still having received no valid or adequate response from AHMSI nor other defendants; seeking to further protect her interest in the property, plaintiff filed a lien / claiming a vested interest against such property and corresponding mortgage. See **Exhibit** 14; UCC-1Financing Statement.

52. Having become increasingly concerned, the plaintiff had a notary public make service of documents upon defendants.

53. On August 6th, 2009, via notary public, plaintiff re sent all documents to defendants; notices rescissions revocations, etc. and included a notary certificate of service and presentment. Nothing in the Plaintiff's correspondence was meant as a validation payment of the alleged debt. See **Exhibit** 15; Notary Certificates of Service numbered 1-5.

54. On September 15th, 2009, defendants filed a notice of foreclosure and scheduled a sale for the 15th of December 2009. See **Exhibit**16; Notice of Foreclosure sale.

55. On September 29, 2009, plaintiff sent out notice of status to QLS. See **Exhibit** 19; notice of status to QLS. See also: Exhibit 19.1; Notary certs. Of service to QLS.

56. On or around October 24, 2009, defendants filed an assignment of debt that was dated effective October 21st, 2009. See **Exhibit** 20; alleged assignment of rights to defendants.

57. Notary had not received any response from defendants until approximately November 10, 2009. See **Exhibit** 21; Notary Certificates of dishonor.

58. Trustee sale was conducted on December 15, 2009.

59. On December 16, 2009, plaintiff found a "Relocation Assistance Offer" taped to the private property/ no trespassing sign on the front screen door. See **Exhibit** 32; Relocation notice.

60. Plaintiff called the telephone number listed on the business card and spoke to a realtor who informed her that if she had not vacated the premises in 30 days, the

Sheriff would be called out to the home and she and her family would be given 15 minutes to gather their belongings.

61. Plaintiff was also told that all belongings that the family would not be able to remove from the home would be "impounded."

62. On December 17, 2009, a truck resembling that of a landscaper pulled up in front of the plaintiff's home.

63. Plaintiff went outside and inquired as to the purpose of "the unexpected visit" and was told by the driver and his crew that her and her family's home was to be "cleaned out."

**FRAUD/ MISREPRESENTATION**

64. Plaintiff incorporates the above paragraphs.

65. The issue is whether the defendants, inter alia, committed fraud/ misrepresentation.

66. Fraud involves the making of false and misleading representations of matters of fact whether by words, conduct or by concealment of what should have been disclosed with the purpose and intent that the plaintiff would be deceived and so that the plaintiff would act upon such representations resulting in her legal injury.

67. In AHMSI's response to plaintiff, AHMSI made the representation to Plaintiff that they were the originator of her mortgage. *See* plaintiff's **Exhibit** 2, ¶4; AHMSI's response to plaintiffs' QWR.

68. The representation of AHMSI being the originator of the plaintiff's mortgage could never have been truthful because the plaintiff's alleged mortgage was entered into on 11-30-2005 and AHMSI was formed in Texas and California on 12-17-2007.

*See* **Exhibits** 23; AHMSI application to do business and exhibit 33, Cal. Business portal report.

69. Also, a copy of the alleged note sent to plaintiff by AHMSI in its reluctant, unsuccessful attempt /refusal to validate the alleged debt shows OPT-1 as the lender/Originator of the mortgage. *See* plaintiff's **Exhibit**1; copy of alleged note and deed of trust.

70. AHMSI made the representation that with respect to the plaintiff's mortgage; it is not a debt collector. See plaintiff's **Exhibit** 2, ¶4 and **Exhibit** 6. See also plaintiff's **Exhibit** 7; cease and desist compliance letter.

71. AHMSI represented to the plaintiff that their principle business is not debt collection. However, their TX application to do bus. states otherwise. *See* **Exhibit** 5; p.4 of AHMSI application to do business TX Sec. of State; **Exhibit** 2 6; copy of AHMSI debt collector bond. (undersealed bond on file)

72. AHMSI represented to plaintiff that she is not entitled to validation of the alleged debt and AHMSI is not required to "validate or verify" the alleged debt. *See* plaintiff's **Exhibit** 5 ¶4.

73. In pertinent part, FDCPA 15 U.S.C. § 1692(g)(a) requires that a debt be validated within 5 days after the initial communication with a consumer.

74. After submitting a "standard dispute letter" as AHMSI requested in its response to QWR, directly contradicting their denials of being required to validate an alleged debt, plaintiff received a letter stating that AHMSI would cease all telephone communications with plaintiff. *See* **Exhibit** 6. See also **Exhibit** 7.

75. Defendant's "letter of servicer transfer" dated June 11, 2008, states on its face that the mortgage had been sold assigned or transferred. See **Exhibit** 2;"servicer transfer letter".

76. In fact, the mortgage had not been sold or assigned to AHMSI at all. See **Exhibit** 20; defendant's alleged assignment effective 10-21-09 recorded in the Arizona property records on 10-28-09.

77. To include, defendants WFB, CML, CMLT are not mentioned in the "Change of servicer letter."

78. The alleged assignment on 10-21-09 is supposedly signed by Officers of SCC; "Tywanna Thomas" as Asst. Vice President and Shelly Scheffey as "Vice President" under the pretense that SCC is "formerly OPT-1."

79. Defendant's representation is fraudulent because there appear to have been no mergers or relationship between SCC and OPT-1. *See:* **Exhibits** 27; Arizona Certifiate of revocation for OPT-1; **Exhibit** 28; California Business Portal Report-(OPT-1 Suspended); **Exhibit** 29; AZ Certificate of non existence for SAND CANYON CORPORATION.

80. In essence, OPT-1 has no authority to act because OPT-1 is revoked/ suspended in both Arizona and California. *See* **Exhibits** 27 and 28.

81. Curiously, SCC is a California Corporation and the assignment is acknowledged by a Notary from the State of Georgia and states that the two signing officers personally appeared before her. See **Exhibit** 20 for notary acknowledgement.

82. AHMSI has presented plaintiff with an alleged "payment history printout" which is dated beginning in January 10, 2007 when "transfer letter" is dated 6-11-2008. *See* **Exhibit** 25 p.2; alleged payment history.

83. Plaintiff frequently received letters from an address of 6501 Irvine Center Drive, Irvine, CA 92618. The face of the letters stated that they were from a company called "Hope now" at an address of: 6501 Irvine Center Dr., Irvine, CA 92618. See **Exhibit** 31; letter from" Hope now"

84. Plaintiff has ample reason to believe these letters were generated by parties associated with this complaint as addresses for AHMSI and SCC are the same as the address listed on the bottom of the Hope Now letter. See Exhibit 26 p.3 of rider and exhibit 34.

85. On or around November 6, 2009, AHMSI sought to recant the misrepresentations it had made earlier. In essence, nearly 1 year after the plaintiff's inquiries, AHMSI made the representation that they are the servicer. No mention of the alleged note holder has ever been made. See exhibit: 22

86. Defendants, acting in concert made false and misleading representations of matters of fact whether by words, conduct or by concealment of what should have been disclosed with the purpose and intent that the plaintiff would be deceived and so that the plaintiff would act upon such representations resulting in damages and legal injury to plaintiff. See: *United States v. Throckmorton,* 98 U.S. 61 (1878); *"There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents and even judgments."*

87. Plaintiff has seen no evidence that the representations of the defendants were NOT false when they were made, and that the defendants did NOT know that their representations were false when they made them.

88. The plaintiff did rely upon the representations of the defendants and was harmed.

89. Plaintiff is entitled to damages in an amount to be determined by this court or at trial.

## RESPA

90. Defendants failed to satisfy the requirements of **RESPA 12 U.S.C. §2605(a);** disclosure to applicant relating to assignment, sale, or transfer of loan servicing.

91. AHMSI failed to satisfy the requirements of **RESPA 12 U.S.C. §2605(1)** notice requirement; **(2)(a)(c)(1)** notice shall be made to the borrower not less than 15 days before the effective date of transfer of the servicing of mortgage loans.

92. Plaintiff has been damaged as a result of defendants' RESPA violations and entitled to relief.

## MISMANAGEMENT OF FUNDS

93. On the alleged payment history, there is an entry for "Attorney Advances." See **Exhibit 25 P. 2**; alleged payment history for plaintiff's mortgage.

94. As plaintiff is not liable for attorney fees in connection with defendant's fraud, "attorney advance" is not a valid account charge or entry for the alleged payment history.

95. Plaintiff demands an accounting of all occurrences / transactions for the mortgage from the time of its alleged origination. By way of clarification, transaction means: transactions posted to the general ledger of plaintiff's account.

96. Plaintiff also demands disclosure of general ledger codes which show to whom transfers of funds were made. **Be advised:** This is NOT request for an alleged payment summary!

97. Plaintiff has been injured by defendant's apparent mismanagement of funds.

**LACK OF INTEREST AND STANDING**

98. Plaintiff incorporates the allegations above.

99. Pursuant to count one of this complaint, and **C.R.P. 17(a),** defendants are not real parties in interest.

100. Defendant's alleged assignment is not supported by any valid source and the fraudulent assignment of the subject property by the defendants gives rise to questions in regards to defendant's claim of interest in the subject property.

101. Defendants cannot produce proper records and substantiated proof of claim and ownership. See: *Gwin v. Calegaris,* 139 Cal. 384, 73 p. 851 (1903).

102. Plaintiff demands the defendants submit the genuine promissory note and deed of trust and not copies thereof. *See: In Re: SMS Financial LLC. v. Abco Homes, Inc.* No 98 50117 Feb. 19, 1995 (5th Circuit court of appeals), in addition, see also *Miller of Staff Mortg. & Inv. Corp.*, 550 F. 2d 1228 (9th Cir. 1971)

103. In reference to the subject property, there is no apparent and relevant connection between SCC and OPT-1. Plaintiff demands proof of consideration given to SCC for in reference to the assignment.

104. In fact, it does not appear that the defendants have legitimate article three standing as to bring action against the plaintiff in form of foreclosure or other.

105. Assuming arguendo, if defendants did have a valid interest in the subject property, plaintiff has seen no evidence that Defendants' alleged interest in the purported genuine note has been perfected.

106. Defendants unwarranted foreclosure actions have caused legal injury and damages to the plaintiff.

**THEFT/ CONVERSION**
**Invalid trustee's sale and trustee's deed**

107. The plaintiff incorporates the allegations above.

108. A person commits theft if, without lawful authority, the person knowingly controls property of another with the intent to deprive the other person of such property. See: **Ariz. Rev. Stat. Ann. §13-1802(a)(1) (West 2003).**

109. On September 15, 2009, acting in concert, defendants sought to gain control over the plaintiff's real property via control of documents of title relating to plaintiff's property.

110. Defendants named QLS as substitute trustee under the deed of trust and subsequently recorded a "notice of trustee's sale.

111. On October 28, 2009, defendants recorded a fraudulent assignment in the Maricopa County Recorder's Office; thereby claiming an interest in plaintiffs real property.

112. On December 15, 2009, defendants did conduct a trustee's sale of the plaintiff's real property subsequently depriving plaintiff thereof.

113. Defendants further controlled documents related to plaintiffs property by recording a "trustee's deed" having the effect of transfer of ownership to defendants and also serving to deprive plaintiff of her property.

114. As defendant's alleged assignment is fraudulent, improper and invalid, defendants have no recognizably valid interest in plaintiff's property which would confer lawful authority to conduct a trustee sale of said property.

115. The defendants, upon recordation of assignment, notice of trustee sale, substitution of trustee and trustee's deed intended to deprive plaintiff of her property and capital which may have been derived there from.

116. The plaintiff has seen no evidence that the defendants had lawful authority to control plaintiff's property and believes that no such evidence exists.

117. Plaintiff has also seen no evidence that defendants did not knowingly control the plaintiff's property with intent to deprive plaintiff of said property and plaintiff believes that no such evidence exist.

118. Plaintiff has incurred damages due to the actions of the defendants and is entitled to relief in the form of vacation of trustee's sale.

## VIOLATION OF DUE PROCESS
**Wrongful Foreclosure**

119. Plaintiff incorporates the allegations above.

120. **Title 42 U.S.C. § 1983** provides protection of civil rights and the 1st , 5th and 7th amendments to the Constitution of the United States assure substantive due process of law.

121. The plaintiff has the right to property under amendment 14 of the Constitution.

122. Defendants QLS and AHMSI as debt collectors were not entitled to non-judicial process ***FDCPA 15 USC 1692 § 808(6)(a)***; unfair practice in pertinent part; taking or threatening to take any non judicial action to effect dispossession or disablement of property.

123. By assigning themselves as trustees and such, in order to take part in a non judicial process which they were not entitled to, defendant's fraudulent actions have violated plaintiff's due process which has affected the plaintiffs' right to property.

124. The defendants' proximate and fraudulent foreclosure deprived plaintiff of her right to be heard in a court of law.

125. Also, there is the matter of the "confession of judgment" in the plaintiff's deed of trust which was written by the alleged originator for her to sign.

126. The plaintiff did not intentionally waive due process rights to defendants or any of their alleged successors or assigns.

127. The confession of judgment which the alleged originator wrote into the deed of trust has the effect of denying due process of law. See: *Ohio Bell Tel., Co. v. Public Utilities Comm'n*, 301 U.S. 292, 307 (1937).

128. In the absence of a disclaimer or a notice of waiver of rights on the face of the deed of trust, any law that allows non judicial process under confession of judgment is unconstitutional and substantively unconscionable.

129. Plaintiff was deprived of due process of law by defendant's foreclosure actions and has been legally injured and damaged.

**VOID /UNENFORCEABLE CONTRACT**

**Unconscionability/ Fraud**

130. The plaintiff incorporates the allegations above.

131. The mortgage is void and unenforceable due to the fraud that defendants have perpetrated. See: *United States v. Throckmorton,* 98 U.S. 61 (1878); *"There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents and even judgments."*

132. The confession of judgment clause in the contract is substantively unconscionable and was for the sole benefit of the alleged originator. See: *Flores v. Transamerica Homes First, Inc.* 93 Cal. App 4th 846.

133. The" power of sale clause" and its effect of waiver of due process was not disclosed nor explained to the plaintiff.

**BREACH OF CONTRACT/ NON DISCLOSURE**

134. The contract makes no representation of intent to submit/ convert plaintiff's mortgage for the purpose of obtaining investment contracts that would be dependent on the private contract between her and the alleged originator.

135. Plaintiff never agreed nor intended to contract with an alleged originator for purposes of obtaining investment contracts from others. Plaintiff had no knowledge of "securitization."

136. The securitization of the plaintiff's contract represents a modification of such. There has never been a novation agreement – substitution of an old contract with a new one, nor a re- negotiation between plaintiff and any party able to substantiate a valid interest in the property.

137.

## WAIVER

138. The plaintiff served notices of removal of trustee, cancellation, rescission of signatures and P.O.A. to the defendants on May 20, 2009.

139. Approximately 7 months has gone by since defendants were served notice. Defendants have never responded to or rebutted such notices. A reply or rebuttal must be received in seasonable time.

140. Plaintiff Re sent defendants notice of dishonor on August 6, 2009. See **Exhibit** 24; Plaintiff's notice of dishonor to defendants.

141. Notary has also dishonored the defendants for failing to respond to disclosure requests with appropriate information and within a timely manner. See Exhibit 21.

## VIOLATIONS OF FAIR DEBT PRACTICES AND STATE STATUTES

142. AHMSI represented to Plaintiff that she was not entitled to validation of alleged debt and as such, violated **FDCPA 809(a)(2);** within 5 days after the initial

communication with a consumer in connection with the collection of any alleged debt, a collector shall verify the debt.

143. AHMSI did not cease communication with plaintiff as they represented in their letter to plaintiff after her dispute. This is a violation of **FDCPA 809(b);** if the consumer disputes the debt in writing, the debt collector shall cease collection of the debt, and **805(a)(c);** ceasing communication.

144. AHMS and QLS violated **FDCPA** § **808(6)(b).** Unfair practices; when they sought non judicial foreclosure under the deed of trust.

145. Defendants sent communications that represented other than who they were actually from. This is a violation of **FDCPA 808(8)** and **812(a);** to design and compile and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the "creditor" is involved in the attempt to collect the alleged debt. See **Exhibit** 31; Letters from "Hope Now."

146. AHMSI and QLS are in violation of: ***A.R.S. § 32-1055(a)*** where it is unlawful for a person to conduct a collection agency in this state without a license.

147. AHMSI and QLS are in violation of: **A.R.S. 32-1056(a)(b);** a person operating a collection agency without a license shall be guilty of a class 1 misdemeanor.

148. WFB in its appointment of QLS as substitute trustee is a conspirator in the violations of AHMSI and QLS.

149. Defendants engaged in conduct- the natural consequence of which was to harass, oppress, or abuse any person in connection with the collection of a debt with the

advertisement for sale of any debt to coerce payment of the debt. See: ***FDCPA 15 U.S.C. 1692 § 806 (3) (4).*** Harassment or abuse.

150. Defendant's recordation of a notice of foreclosure sale and the posting of such notice was a violation of **FDCPA § 806 (3)** the publication of a list of consumers who allegedly refuse to pay debts; (4) the advertisement for sale of any debt to coerce payment of the debt.

151. Defendants misrepresented one or more material facts in connection with the alleged debt. ***See: FDCPA 15 USC 1692*** § ***807 (11);*** **False or misleading representations.**

152. Defendants AHMSI violated ***FDCPA*** **15 USC 1692 § 807***;* False or misleading representations; in pertinent part; failure to communicate to QLS that the debt is in dispute. See **Exhibits** 6 & 3. See also **Exhibit** 18; debt validation notice from QLS.

153. Defendants AHMSI failed to provide the name of the original creditor and other pertinent information when the affiant disputed the debt. AHMSI is in violation of **FDCPA 15 USC 1692 § 809.**

154. Defendants are in violation of **FDCPA 15 USC 1692 § 808(6)(a);**. Unfair practices where a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt, taking or threatening to take any non judicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest; and believes that no such evidence exists.

155. Affiant has seen no evidence that AHMSI is NOT in violation of ***FDCPA* 15 USC 1692 § 806**; Harassment or abuse where A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt with the advertisement for sale of any debt to coerce payment of the debt and; plaintiff believes that no such evidence exists.

156. Defendants violated **FDCPA §808(7)** when they hired a company to come to the plaintiffs home on or around the first of each month and attach small scraps of paper to the frame of the front door.

157. Defendants represented an "attorney advance" on the alleged account statement. Per FDCP §807(2) The false misrepresentation of (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

## HARASSMENT

158. After receiving a letter from AHMSI stating they would cease communication with plaintiff, AHMSI hired a company harass plaintiff by leaving communications on the door jamb of plaintiff's front door.

159. Plaintiff has seen no evidence that the recordation of a notice of trustee sale was NOT a violation of ***FDCPA 15 USC 1692* § 806. Harassment or abuse**

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

160. Plaintiff, acting in good faith and having entered into an administrative process with defendants on or around Dec. 18th, 2008.

161. Received response from defendant AHMSI on February 18, 2009. No response received from remaining defendants who had been contacted.

162. Plaintiff began receiving notices of defendants proposed foreclosure via mailers from unrelated entities on or around September 10th of 2009.

163. Because the defendants did not act in good faith and with clean hands, the plaintiff has suffered unnecessary emotional distress.

164. Plaintiff has had to endure someone coming to her home with the intent of cleaning it out without her knowledge or permission.

165. Plaintiff has had to endure notices and offers of relocation assistance. Presumably offered by defendants in order to salve their guilty consciences.

166. While waiting and expecting answers she is definitely "entitled to" and never received, plaintiff has had to endure "the brush off" when in good faith, striving to communicate with the defendants.

167. Plaintiff has had to endure the fraudulent sale of her and her family's home and wonder where they would live if not able to maintain their home of approximately 15 years.

168. The conduct of the defendants and callous treatment of the plaintiff in regards to her *home* is ridiculous, intentional, unwarranted and unnecessary.

169. Plaintiff has suffered intentional infliction of emotional distress due to conduct of defendants.

## CONSPIRACY

170. Plaintiff frequently received letters from an address of 6501 Irvine Center Drive, Irvine, CA 92618. The face of the letters stated that they were from a company called "Hope now" at an address of: 6501 Irvine Center Dr., Irvine, CA 92618. See **Exhibit** 31; letter from" Hope now"

171. Plaintiff has ample reason to believe these letters were generated by parties associated with this complaint as addresses for AHMSI and SCC are the same as the address listed on the bottom of the Hope Now letter.

172. Defendants conspired to assign themselves as alleged parties of interest regarding the plaintiff's property.

173. All defendants knew or should have known that they were entering into conspiracy for the purpose of depriving plaintiff of her property and were violating FDCPA, due process rights of plaintiff, committing theft, fraud and harassment.

## ADVERSE POSSESSION/ QUIET TITLE

174. Plaintiff's claim to property is open, continuous, hostile and notorious in opposition to that of the defendant's.

175. Plaintiff claims peaceable and adverse possession of the property pursuant to **A.R.S. § 12-521( B)**; "Peaceable and adverse possession" need not be continued in the same person, but when held by different persons successively there must be a privity of estate between them.

176. Pursuant to ***A.R.S.* § 12-523;** Plaintiff also occupies the property under a claim of title and color of law title.

177. Although mortgage was allegedly refinanced in 2005, plaintiff obtained title and interest in the property in 1994 and has since retained fee simple interest in the property and title thereto.

178. Pursuant to ***A.R.S.* § 12-523(a)** An action to recover real property from a person in peaceable and adverse possession under title or color of title shall be commenced within three years after the cause of action accrues, and not afterward.

179. Defendants have no right of recovery as the statute of limitations for their alleged right to recover has run.

180. Plaintiff is entitled to establishment of her estate and the barring and stopping of defendants from having or claiming any rights or title to the premises adverse to her own.

**WHEREFORE:** Having set forth numerous legally sufficient causes of actions against the defendants, plaintiff requests:

A. Defendants be required to deed back to the plaintiff the subject real property and the court void plaintiffs mortgage contract and Cancel trustee's deed; vacate trustee's sale.

B. Award Plaintiff her costs in this action;

C. Award plaintiff permanent injunctive relief from all attempts at foreclosure by the defendants;

D. Award plaintiff monetary, punitive and exemplary damages appropriate to punish defendants and deter others from engaging in similar misconduct.

E. That plaintiff be awarded statutory and prejudgment damages as permitted by law;

F. That plaintiff be awarded treble damages as permitted by law;

G. To quiet title;

H. Award plaintiff compensatory and general damages according to evidence;

I. Award interest at the prevailing legal rate of interest accrued on any damages awarded to the extent permissible under the law;

J. For admin. Fees and costs be awarded as permitted by law;

K. Enter such other further declaratory relief and legal damages to which Plaintiff may be entitled as a matter of law or equity, or which the Court determines to be just and proper

Dated this 28 day of December, 2009

LaShauna Coleman
LASHAUNA COLEMAN

//////
/////////////////

# VERIFICATION

**STATE OF ARIZONA )**

**COUNTY OF MARICOPA)**

I, LASHAUNA COLEMAN, being first duly sworn, upon my oath, depose and state:

1. I am the Affiant in the above – entitled action.
2. I have read the foregoing complaint and know the contents thereof.
3. That the contents stated herein are true and accurate to the best of my knowledge, except such matters as are settled to be upon information and belief, and to those matters, I believe them to be true.

Further Affiant sayeth naught.

LaShauna Coleman
**Signature of Person Making Affidavit**

SUBSCRIBED, SWORN TO, AFFIRMED AND ACKNOWLEDGED before me, the under-signed Notary Public, on this 28 day of December 2009, by LASHAUNA COLEMAN, known to me, or who has satisfactorily demonstrated to me the above name Petitioner in this matter.

Signature of Notary Public

March 5, 2011
Notary Expiration Date

(SEAL)

OFFICIAL SEAL
GLADYS HERNANDEZ
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires March 5, 2011

GREAT SEAL OF THE STATE OF ARIZONA 1912

# AFFIDAVIT

## of LA SHAUNA COLEMAN

Re: Ahmsi Et. Al

State of Arizona )
) ss.
County of Maricopa )

"Indeed, No more than such affidavit are necessary to make the prima facie case." *United States v. Kis*, 658 F.2d 526 (1981).

**COMES NOW** LaShauna Coleman (hereinafter "affiant") a conscious, living woman, residing in Arizona being first duly sworn/affirmed and does depose, say, declare and affirm by affiant's signature that I am over the age of 18 years and have first hand personal knowledge of the following statements and affirm the same are true and correct to the best of the my knowledge and belief, to wit:

1. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of defendants sued herein was the agent, employee, assignee, predecessor or successor in interest of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and or employment.
2. Plaintiff is the owner of the single family home located at 4039 E. Sunland Avenue Phoenix, Arizona 85040; parcel ID 123-16-055 (The property).
3. Plaintiff acquired a vested interest in the property in 1994, and title to the property in 2000. Plaintiff holds her interest in fee simple.
4. Prior to November 30, 2005, plaintiff's home was under a fixed rate mortgage.
5. As of November 30, 2005, the plaintiff allegedly refinanced her home in order to obtain consumer funds to upgrade her home.

**AFFIDAVIT**

**of LA SHAUNA COLEMAN**

Re: AHMSI Et. Al

6. OPTION ONE MORTGAGE CORPORATION is named as the Lender/originator for the mortgage. See plaintiff's **Exhibit** 1; deed of trust.
7. On or around June 11, 2008, the plaintiff received a letter in the mail stating that AHMSI would be the new "servicer" for her loan. See plaintiff's **Exhibit** 2; "Change of servicer letter"
8. On September 9, 2008, the plaintiff obtained information in regard to her mortgage that she had not previously been privy to.
9. On December 22, 2008 entering into an administrative process, the plaintiff invoked ***RESPA***; **USC section 6 §2605** and thereby requested along with other material facts; full disclosure of the whereabouts of her genuine promissory note and the originator of such from AHMSI. See **Exhibit** 3; Plaintiff's QWR
10. Plaintiff sent same to OPTION ONE MORTGAGE.
11. No response was received from OPTION ONE MORTGAGE nor was the mailing returned to plaintiff.
12. Plaintiff sent a "general claims rescission" to AHMSI on or around February 5, 2009. See **Exhibit** 4; Plaintiff's general rescission notice
13. AHMSI responded to the plaintiffs QWR on February 18, 2009. See **Exhibit** 5; AHMSI response to plaintiffs QWR
14. In comparison to the information that the plaintiff knew, believed, or had been led to believe, AHMSI's response to the QWR was inadequate and lacking in substance also, the letter contained severe misrepresentations.

**AFFIDAVIT**

**of LA SHAUNA COLEMAN**

Re: AHMSI Et. Al

15. On April 22, 2009, the plaintiff sent a secondary letter of dispute to AHMSI. See **Exhibit** 6; plaintiff's "general dispute letter."

16. On or around May 1st, 2009, AHSMI responded to plaintiffs second dispute with a letter stating that they would "cease and desist" communication. See **Exhibit** 7; AHMSI response to general dispute letter.

17. Because of the above referenced occurrences, on or around May 20th, 2009, the plaintiff re-sent QWR along with notices of cancelation, rescission, revocation of powers of attorney and signatures and removal of trustees to defendants. Same was sent to FIRST AMERICAN TITLE COMPANY. See **Exhibit** 8; notice of cancellation, **Exhibit** 9 revocation of power of attorney and signatures, **Exhibit** 10, notice of removal of trustee(s).

18. Seeking to protect her interest in the property, on May 20, 2009, plaintiff Quit claimed the defendants off of the deed of trust. See plaintiff's **Exhibit** 11; Quit claim deed

19. Despite AHMSI's statement cease and desist; to the best of the plaintiffs knowledge, sometime in May of 2009, defendants hired a company to come to the plaintiffs home on or around the first of each month and attach small scraps of paper to the frame of the front door. See **Exhibit** 12; "Scraps of paper".

20. Expecting viable and significant communication instead of small scraps of paper; On June 5th, 2009, the plaintiff sent a "notice of communication" to AHMSI which

**AFFIDAVIT**

**of LA SHAUNA COLEMAN**

Re: AHMSI et Al

stated that they were only to communicate with plaintiff via mail and on their letterhead. See **Exhibit** 13; plaintiff's "notice of communication."

21. On August 5, 2009, still having received no valid or adequate response from AHMSI nor other defendants; seeking to further protect her interest in the property, plaintiff filed a lien / claiming a vested interest against such property and corresponding mortgage. See **Exhibit** 14; UCC-1Financing Statement.

22. Having become increasingly concerned, the plaintiff had a notary public make service of documents upon defendants.

23. On August 6th, 2009, via notary public, plaintiff re sent all documents to defendants; notices rescissions revocations, etc. and included a notary certificate of service and presentment. Nothing in the Plaintiff's correspondence was meant as a validation payment of the alleged debt. See **Exhibit** 15; Notary Certificates of Service numbered 1-5.

24. On September 15th, 2009, defendants filed a notice of foreclosure and scheduled a sale for the 15th of December 2009. See **Exhibit**16; Notice of Foreclosure sale.

25. On September 29, 2009, plaintiff sent out notice of status to QLS. See **Exhibit** 19; notice of status to QLS.

26. On or around October 24, 2009, defendants filed an assignment of debt that was dated effective October 21st, 2009. See **Exhibit** 20; alleged assignment of rights to defendants.

**AFFIDAVIT**

**of LA SHAUNA COLEMAN**

Re: Atmsi Et. Al

27. Notary had not received any response from defendants until approximately November 10, 2009. See **Exhibit** 21; Notary Certificates of dishonor.

28. Trustee sale was conducted on December 15, 2009.

29. On December 16, 2009, plaintiff found a "Relocation Assistance Offer" taped to the private property/ no trespassing sign on the front screen door. See **Exhibit** 32; Relocation notice.

30. Plaintiff called the telephone number listed on the business card and spoke to a realtor who informed her that if she had not vacated the premises in 30 days, the Sheriff would be called out to the home and she and her family would be given 15 minutes to gather their belongings.

31. Plaintiff was also told that all belongings that the family would not be able to remove from the home would be "impounded."

32. On December 17, 2009, a truck resembling that of a landscaper pulled up in front of the plaintiff's home.

33. Plaintiff went outside and inquired as to the purpose of "the unexpected visit" and was told by the driver and his crew that her and her family's home was to be "cleaned out."

34. Plaintiff previously had no knowledge in regard to the "power of sale" clause and it was not disclosed to her at the origination of her mortgage.

35. Plaintiff has seen no evidence that defendants did NOT make false and misleading representations of matters of fact regarding their status and identity in relation to the

**AFFIDAVIT**

**of LA SHAUNA COLEMAN**

Re: AHMSI Et. Al

original note and its origination as well other instruments and information related to this proceeding- whether by words, conduct or by concealment of what should have been disclosed with the purpose and intent that the plaintiff would be deceived and so that the plaintiff would act upon such representations resulting in her legal injury and; plaintiff believes that no such evidence exists. ***See: Ariz. Rev. Stat.* 13-2320**.

36. Plaintiff has seen no evidence that the representations of the defendants were NOT false when they were made, and that the defendants did NOT know that their representations were false when they made them.

37. Plaintiff has seen no evidence that SAND CANYON CORPORATION OR OPTION ONE MORTGAGE ever had a valid interest in the property, the genuine note and deed of trust and; plaintiff believes that no such evidence exists.

38. The plaintiff has seen no evidence that defendants have given valuable consideration for the genuine deed of trust and genuine promissory note and believes that no such evidence exists.

39. The plaintiff has seen no evidence that the burden of proof and presentation of the *genuine* promissory note and deed of trust does NOT rest with the defendants and believes that none exists. **UCC § 3-302**

40. Plaintiff has seen no evidence that defendants have not committed theft and believes that no such evidence exists. *See:* Ariz. Rev. Stat. Ann. 13-1802(a)(1)

41. (West 2003)

**AFFIDAVIT**

**of LA SHAUNA COLEMAN**

Re: AHMSI Et. Al

42. Plaintiff has not seen any evidence that defendants did NOT conspire for the purpose of depriving the plaintiff of her right to enjoyment of her property and plaintiff believes that no such evidence exists.

43. Plaintiff has seen no evidence that the securitization of the genuine note did NOT represent a novation to the genuine contract and; plaintiff believes that no such evidence exists.

44. Plaintiff has seen no evidence that there was a novation agreement between herself and the defendants and; plaintiff believes that no such evidence exists.

45. Plaintiff has seen no evidence that the defendants informed her that her note was to be converted for the purpose of forming investment contracts and; plaintiff believes that no such evidence exists.

46. Plaintiff has seen no evidence that defendants were NOT in violation of the when they sought non judicial foreclosure under the deed of trust and; plaintiff believes that no such evidence exists.

47. Plaintiff has seen no evidence that AHMSI & QLS were NOT attempting to collect a debt in the state of Arizona without a license and; plaintiff believes that no such evidence exists.

48. Plaintiff has seen no evidence that defendants did NOT use unfair or unconscionable means to collect or attempt to collect any debt and plaintiff believes that no such evidence exits.

**AFFIDAVIT**

**of LA SHAUNA COLEMAN**

Re: AHMSI Et. Al

49. Plaintiff has seen no evidence that AHMSI is a "licensed mortgage servicer" in the state of Arizona and; plaintiff believes that no such evidence exists.

50. Plaintiff has seen no evidence that defendants did NOT advertise the name of the plaintiff by unnecessarily posting and filing "foreclosure" notices in the general public for purposes of harassment, embarrassment and coercion and; plaintiff believes that no such evidence exists. See: ***FDCPA* § 806 (3) (4).**

51. Plaintiff has seen no evidence that SAND CANYON CORPORATION did not enter into a conspiracy with remaining defendants in order to enrich themselves at the plaintiff's expense and to deprive plaintiff of her property.

52. Affiant has seen no evidence that AHMSI is NOT in violation of FDCPA 15 USC 1692 **§ 806. Harassment or abuse** where A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt with the advertisement for sale of any debt to coerce payment of the debt and; plaintiff believes that no such evidence exists.

53. The plaintiff has seen no evidence that defendants did NOT violate ***FDCPA 15 USC 1692 § 807;*** **False or misleading representations;** in pertinent part; failure to communicate that a disputed debt is disputed.

54. Plaintiff had no knowledge of what a "confession of judgment" or "power of sale clause" was until very recently.

# AFFIDAVIT

**of LA SHAUNA COLEMAN**

Re: Athosi et. Al

For all the reasons set forth above and throughout this affidavit, which the affiant incorporated herein in its entirety- makes these facts known and that the above referenced matters shall establish that all aforesaid facts, statement, determination of Sworn Affidavit of LA SHAUNA COLEMAN are entirely true and correct.

La Shauna Coleman

LA SHAUNA COLEMAN

*FURTHER AFFIANT SAYETH NAUGHT*

SUBSCRIBED and SWORN to before me

____________________________ NOTARY PUBLIC in and for said Maricopa County in the State of Arizona

this 28 day of December, 2009.

OFFICIAL SEAL
GLADYS HERNANDEZ
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires March 5, 2011